**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nanette Marie Lane, | No. CV-22-00056-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Nanette Marie Lane's Application for Supplemental Security Income ("SSI") by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 19), Defendant Social Security Administration Commissioner's Response Brief (Doc. 22), and Plaintiff's Reply Brief (Doc. 23). The Court has reviewed the briefs, Administrative Record (Doc. 18, "R."), and the Administrative Law Judge's ("ALJ") decision (R. at 32-42) and affirms the ALJ's decision for the reasons addressed herein.

**I.     BACKGROUND**

Plaintiff protectively filed an application for SSI on August 9, 2018, for a period of disability beginning on June 8, 2017. Plaintiff later amended her disability date to August 9, 2018. (R. at 56). Plaintiff's claims were denied initially on January 18, 2019, and upon reconsideration on June 11, 2019. (*Id.*) Plaintiff testified before an ALJ in a telephone

hearing regarding her claims on November 5, 2020. (*Id.*) The ALJ denied her claims on January 5, 2021. (R. at 32-42). On November 18, 2021, the Appeals Council denied her request for review of the ALJ's decision. (R. at 1-5). On January 12, 2022, Plaintiff filed this action seeking judicial review. (Doc. 1).

The Court has reviewed the medical evidence in its entirety and the pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's alleged disability based on the severe impairments of degenerative disc disease of the lumbar and cervical spine with spondylosis, obstructive sleep apnea ("OSA"), and obesity. (R. at 35).

Ultimately, the ALJ evaluated the medical evidence and opinions and concluded that Plaintiff was not disabled. (R. at 42). The ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 37). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 416.967(b)" with certain function limitations and concluded that Plaintiff was "capable of performing past relevant work as a photographer." (R. at 38, 42).

**II.     LEGAL STANDARD**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting

evidence." *Id*. Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(d). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 416.920(e). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

**III.   ANALYSIS**

Plaintiff raises two arguments for the Court's consideration: (1) whether Plaintiff's symptom testimony was erroneously rejected, and (2) whether the ALJ properly considered the assessment of treating physician, Dr. Darrin Saikley, M.D.  (Doc. 19 at 1).  Plaintiff also requests this Court to remand the case for an award of benefits. (*Id*. at 23-24).

**A. The ALJ did not err in rejecting Plaintiff's symptom and pain testimony.**

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons

supported by substantial evidence to reject Plaintiff's symptom testimony. (Doc. 19 at 14-23.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id*. (quoting *Lingenfelter*, 504 F.3d at 1040). Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ's decision accounted for Plaintiff's impairments encompassing degenerative disc disease of the lumbar and cervical spine with spondylosis, obstructive sleep apnea ("OSA"), and obesity. (R. at 35). Plaintiff testified that she experienced pain all the time, mostly in her legs. (R. at 78). Plaintiff asserted that the pain is a constant, sharp, dull, and aching pain that she also experienced in her back and neck. (R. at 79, 83). Plaintiff stated that standing and bending make the pain worse and even sitting for too long in her chair can make it uncomfortable and she must stand to stretch. (R. at 79). Plaintiff further stated that if she stands or sits for too long her feet would fall asleep and she "could beat them with a hammer and I get nothing from them." (R. at 81). Plaintiff testified she cannot walk to the mailbox anymore due to the pain in her legs and back and because of her anxiety, and she can no longer walk nor sit or stand for too long. (R. at 83).

The ALJ considered the level of Plaintiff's medical issues and found that her "impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 40). The ALJ then cited to specific examples in the record to support his findings. Plaintiff, however, argues that the ALJ failed to provide specific, clear, and convincing reasons to reject her symptom testimony. (Doc. 16 at 14-23). The Court disagrees. The ALJ appropriately relied on medical evidence that did not corroborate the Plaintiff's allegations as only one reason to discount her testimony. Although this could not be the ALJ's sole consideration, it is a permissible one. *Burch*, 400 F.3d at 680. The ALJ also considered Plaintiff's conservative treatment and her daily activities as additional reasons for discrediting Plaintiff's symptom testimony.

Plaintiff's argument is that her physical impairments leading to neck, back and leg pain, therefore the Court will consider that medical evidence in its analysis of the ALJ's decision. Plaintiff's first argument implies that the ALJ relied on the severity of the symptoms to reject her symptom testimony. (Doc. 19 at 15-16). Plaintiff's argument is misplaced. The ALJ did not require proof of the severity of Plaintiff's symptoms; however,

the ALJ is also not required to believe every allegation of pain made by the Plaintiff. "The Court does not read the ALJ's 'not entirely consistent' statement [ ] as requiring Plaintiff to fully corroborate her symptom testimony with objective medical evidence. Instead, the ALJ's statement merely notes that the record contains conflicting evidence." *McPherson v. Comm'r of Soc. Sec. Admin*., No. CV-20-08202-PCT-JAT, 2021 WL 3709845, at *7 (D. Ariz. Aug. 20, 2021).

The ALJ's discussion takes notice of imaging that was largely unremarkable. A November 2018 x-ray of Plaintiff's right knee revealed no acute findings, and an MRI of her left hip was also unremarkable. (R. at 40, 901-02, 905). An x-ray of her right foot in June 2019 was again, unremarkable. (R. at 900). A February 2020 MRI of Plaintiff's cervical spine showed degenerative changes, but no disc protrusion or cord compression. (R. at 40, 896-97). The ALJ also noted that in March 2020, Plaintiff exhibited an antalgic gait, but examination notes indicated there was no use of an assistive device. (R. at 40, 947). The ALJ further discussed that Plaintiff reported she fell five times in 2019, but in 2020 she reported no falls. (R. at 40, 978, 1070). Plaintiff argues that this statement by the ALJ failed to invalidate her symptom testimony because it is not inconsistent with her statements. (Doc. 19 at 21). However, the Court finds it a reasonable point made by the ALJ, and as the Commissioner's argument suggested, to show an improvement in Plaintiff's symptoms. (Doc. 22 at 21).

The ALJ's discussion points out that many of Plaintiff's physical examinations were largely unremarkable despite some claims of aches and tenderness. (R. at 40). Plaintiff asserts that the ALJ failed to provide specific reasons to reject Plaintiff's symptom testimony because he made non-specific citations to over 300 pages of medical records. (Doc. 19 at 22). While the citation method employed by the ALJ was laissez-faire, four out of the six exhibits the ALJ cited to contained only nine to thirty-three pages. The Court's review of the exhibits confirm that the ALJ's reasoning is discernable and supported by specific evidence.  If an ALJ's decision is made "with less than ideal clarity, a reviewing court will not upset the decision on that account if [his] path may reasonably be discerned."

*Alaska Dept. of Edvtl. Conservation v. E.P.A.,* 540 U.S. 461, 497 (2004); *See Brown-Hunter*, 806 F.3d at 492 (applying this standard to social security). The exhibits show that Plaintiff did have largely unremarkable examinations, despite claims of pain, and exhibited normal gait or movement in all extremities. (R. at 438-39, 523, 528, 574-75, 584-85, 654, 663-64, 698, 710, 848, 855, 863-64, 875-76, 925, 938-39, 958, 968, 980-81, 990, 1006-07, 1017). In August 2018, Plaintiff's examination was normal except for a finding of obesity. (R. at 438-39). Other examinations were normal with notations of tenderness in Plaintiff's spine and occasionally in the shoulders, knees, hips, or feet. (R. at 574-75, 584-85, 663-64, 947, 957-58, 968, 980-81, 998, 1006-07, 1028, 1037-38, 1049, 1068). Even with complaints of pain, examinations revealed that Plaintiff maintained a full weight bearing gait with no use of an assistive device and normal range of motion in her extremities. (R. at 585, 1017, 1049). Plaintiff additionally argues that the ALJ failed to explain why examinations such as these would invalidate symptom testimony when pain is the contributing factor of Plaintiff's disability. (Doc. 19 at 21). The ALJ is not required to mechanically specify each allegation that every piece of medical evidence undermined. Grouping the medical evidence with the allegations they undermined was sufficient. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Plaintiff's arguments only seek to offer alternative interpretations of the evidence, which the Court does not support. *See Burch*, 400 F.3d at 679.

The ALJ also considered the conservative course of treatment as a factor in the non-disability determination. (R. at 40). This was also a proper consideration by the ALJ. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (indicating that if a claimant has only received conservative treatment, this is a proper reason for the ALJ to discount his symptom testimony). Plaintiff contends that the injections and nerve blocks she underwent do not qualify as conservative medical treatment. (Doc. 19 at 19-20). However, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of*

*Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ noted that Plaintiff reported pain levels from six to nine out of ten, but Plaintiff displayed positive responses to pain levels with medication. (R. at 40, 664, 918, 926, 934, 1018-19). The ALJ further discussed that while Plaintiff described pain in July 2020 as "incapacitating," her medical providers made no referrals for additional specialty care with an orthopedic surgeon or suggested more aggressive treatments. (R. at 40, 916). In December 2019, Plaintiff received 65% pain relief for approximately four months from nerve block treatment and radiofrequency. (R. at 40, 918, 920, 1018, 1029). Records from August 2020 showed that Plaintiff received 70% pain relief from radiofrequency treatment that lasted three to five months. (R. at 912, 914). Another round of radiofrequency provided 50% pain relief for four months, and injections provided three to five months of pain relief. (R. at 664, 1068-69). These medical notations clearly contradicts Plaintiff's testimony that she never received more than 50% of pain relief from treatment. (R. at 80, 664, 918, 926, 934, 1018-19). Plaintiff argues that the medical evidence the ALJ cited to does not show Plaintiff was provided with lasting relief to allow her to work or invalidate her symptom testimony. (Doc.19 at 20-21). However, based upon the medical evidence, the record clearly shows that Plaintiff exhibited vast improvement with her prescribed treatment plans for months at a time and received significant pain relief from her impairments.

In consideration of Plaintiff's daily living activities, the ALJ acknowledged that Plaintiff's daily activity level was not consistent with her alleged limitations. (R. at 40). The ALJ cited to Plaintiff's testimony that she has resided with a friend for the past nine years and occasionally drove her roommate's car to perform errands, she used her cell phone to order groceries or schedule cab pick-ups and has a tablet to read the Bible and study her faith with friends on Zoom or used it for puzzles, she has planted tomato plants in her yard, she attended church services and has attended a church convention with friends in 2021, she attended multiple car shows with her roommate, she will go out to eat with her roommate, helped to care for two dogs at her home, watched television, and she has flown to California alone to visit her mother on three occasions prior to her hearing date.

(R. at 39). Additionally, Plaintiff self-reported in 2018 that she performed household chores, cared for dogs, shopped in stores, could drive and go out alone, and attended religious services once a week. (R. at 39, 309, 311-12, 314). In 2019, Plaintiff again reported that she could do household chores, go grocery shopping and drive. (R. at 39, 340-41). Plaintiff claimed that attending the church convention or services was difficult because she could not sit for that long, her legs would swell, and she had to change positions frequently. (Doc. 19 at 16). Plaintiff also claimed that during her trips to California, she would sit with her mother and did not cook. (Doc. 19 at 17). Plaintiff also alleged that doing household activities increased her pain level and she would need to take breaks during activities. (Doc. 19 at 18). However, "[e]ven where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Molina*, 674 F.3d at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine*, 574 F.3d at 694. Plaintiff further argued that her daily activities do not contradict her symptoms or show how she could perform a full day's work activity. (Doc. 19 at 19). The Court is not persuaded by Plaintiff's arguments. The list of activities provided by the ALJ seems to contradict Plaintiff's claim of having to spend most of her day in a chair. (R. at 309). Contrarily treatment notes reveal that Plaintiff was pacing grocery store aisles for exercise or busy organizing her home or purchased a treadmill to work out. (R. at 811-12, 818, 1007). The ALJ's finding that Plaintiff was not as limited as she alleged was reasonable and supported by the record evidence.

Plaintiff takes issue with the ALJ reference to a function report which indicated that she rode motorcycles, went horseback riding and trained horses as part of her hobbies. (Doc. 19 at 17, *see* R. at 39, 312). Plaintiff maintained that these were activities she did prior to her illness, but the ALJ suggested that she still took part in these activities in his decision. (Doc. 19 at 17). Upon examination of the report, it is unclear if Plaintiff still takes part in motorcycle or horseback riding. The report asks to describe any changes in these activities since the illness or condition began and Plaintiff responded, "Can't sit for

long period of times on motorcycle can't and afraid to ride anymore, might get hurt more." (R. at 312). It is unclear if Plaintiff no longer participated in one or both activities. Regardless, the ALJ's reference to the activities is harmless error as their inclusion or non-inclusion would do little to alter the ALJ's disability findings. *See Molina*, 674 F.3d at 1115 (error is harmless when it is negligible to the nondisability determination).

Given the scope of the record, the ALJ properly relied upon objective medical evidence to find the Plaintiff's allegations were inconsistent with the record, the Plaintiff's conservative treatments for her impairments, and Plaintiff's daily activities to discount Plaintiff's symptom testimony. Sufficient evidence enables this Court to reasonably discern the ALJ's path to conclude that his decision is supported by substantial evidence. As stated previously, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. Therefore, the Court finds the ALJ did not err in rejecting Plaintiff's pain and symptom testimony. The ALJ provided specific, clear, and convincing reasons to dismiss Plaintiff's claims and those reasons were supported by substantial evidence.

**B. The ALJ properly considered the medical opinion evidence.**

Plaintiff argues that the ALJ erred in his assessment of Darrin Saikley, M.D., by failing to explain the supportability and consistency factors required to be supported by substantial evidence. (Doc. 19 at 1).

Plaintiff applied for disability benefits after March 27, 2017, and is subject to the new set of regulations for evaluating evidence from medical providers. *See* 20 C.F.R. § 416.920c. The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions. The new regulations state:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and

> prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c.[1]

The regulations require an ALJ to articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b).

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* Although, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792.

In the present case, Dr. Saikley submitted three separate check-box medical questionnaires in June 2019, December 2019, and May 2020. Dr. Saikley opined that Plaintiff could sit for less than two hours, stand and walk for less than two hours, would

---

[1] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

- 11 -

1  need frequent breaks and rest, could carry less than ten pounds, and would miss six or more
2  days of work per month. (R. at 800-07).

3        The ALJ found Dr. Saikley's opinions to be somewhat persuasive to the finding that
4  Plaintiff has severe impairments. (R. at 41). The ALJ found that Dr. Saikley's opinions on
5  the medical questionnaires were largely based upon the Plaintiff's subjective statements
6  and were not consistent or supported by the objective medical record evidence. (R. at 41).
7  *See Flaten v. Sec'y of Health and Human Servs.,* 44 F.3d 1453, 1463-64 (9th Cir. 1995)
8  (an ALJ is entitled to discount a doctor's assessments that are based upon the claimant's
9  own reports). Plaintiff asserts that Dr. Saikley stated on all the assessments that Plaintiff's
10 limitations were based upon documented objective or diagnostic findings. (Doc. 19 at 11-
11 12). However, Dr. Saikley simply wrote degenerative disc disease as Plaintiff's limitation
12 without any supporting explanation or documentation. "We have held that the ALJ may
13 'permissibly reject []…check-off reports that [do] not contain any explanation of the bases
14 of their conclusions.'" *Molina*, 674 F.3d at 1111-12 (citations omitted). Moreover, Dr.
15 Saikley's notations denoted that Plaintiff was under the care of other physicians for her
16 impairments and Dr. Saikley specifically noted to request correspondence from the pain
17 management providers. (R. at 801, 805, 807). Dr. Saikley further notated on two of the
18 assessments that he did not provide treatment or supervised treatment to Plaintiff. (R. at
19 801, 807). Multiple treatment notes from Dr. Saikley's own examinations of Plaintiff
20 suggest other findings contrary to what was in the forms. Dr. Saikley observed on several
21 visits that Plaintiff was well since her last visit and examinations were largely
22 unremarkable with normal gait and station and normal movement in all her extremities. (R.
23 at 528, 540, 543, 694, 705, 710, 848, 851-55, 859, 867, 879). The ALJ added that the State
24 agency reviewing physicians had supported their assessments with specific examples of
25 evidence such as the conservative treatment history. (R. at 41, 134-35, 152-54, 161). The
26 ALJ also found the administrative findings were consistent with the medical evidence and
27 activities of daily living. (R. at 41). Plaintiff contends that the ALJ did not provide citations
28 or sufficient explanation to support the finding that the medical evidence was inconsistent

with Dr. Saikley's opinions. (Doc. 19 at 12-13). The regulations specifically state that, "it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record… We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 416.920c(b)(1).

Plaintiff's final argument again asserts that since Dr. Saikley was a treating physician, the ALJ should have been more detailed in his analysis and why nonexamining physician opinions were more persuasive than a treating physician. (Doc. 19 at 13). However, the new regulations no longer afford any deference to one treating source over another. An ALJ need not adopt wholesale any physician's opinion regarding a claimant's limitations. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The two most important factors for an ALJ to consider are consistency and supportability. The ALJ clearly discussed how persuasive he found each medical opinion and articulated sufficient reasons based upon the consistency and supportability factors to validate his nondisability finding.

The Court finds that the ALJ cited to specific examples in the medical record that were inconsistent with Dr. Saikley's medical opinion regarding Plaintiff's limitations. The ALJ's findings fully articulated how persuasive he found all the medical opinions from each source. It is apparent from the record that the ALJ provided substantial evidence to sufficiently support his decision.

**IV. CONCLUSION**

The Court finds that substantial evidence supports the Commissioner's nondisability determination. The ALJ properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence, and properly considered the medical opinion evidence of record. Therefore, the Court finds that the ALJ did not err in his decision, which is based on substantial evidence. The Court need not reach the merits of Plaintiff's request to remand for an award of benefits since the Court

finds a remand is unwarranted.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 22nd day of June, 2023.

_____
Honorable Diane J. Humetewa
United States District Judge